**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL NOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 10 cv 2018 |
| | ) | |
| R.R. DONNELLEY & SONS, a Delaware corporation, | ) ) | Judge Sharon Johnson Coleman |
| | ) | |
| Defendant. | ) ) | |

**Memorandum Opinion and Order**

This case comes before the Court on defendant R.R. Donnelley & Sons' ("Donnelley") Motion for Summary Judgment [38] and Motion to Strike plaintiff Michael Noe's Local Rule 56.1(b)(3) Statement [56]. On March 31, 2010, Noe filed a four count complaint alleging retaliation and interference in violation of the Family and Medical Leave Act of 1993, 29 U.S.C. §2611 ("FMLA"), violation of the Illinois Whistleblower Act, 740 ILCS 174/1 et seq., and common law retaliation. The Court heard oral arguments on the summary judgment motion on October 17, 2011. For the reasons stated below, Donnelley's motion to strike is denied and summary judgment is granted in favor of Donnelley.

**Motion to Strike Plaintiff's 56.1(b)(3) Statement**

The Court will first address Donnelley's motion to strike because of the role Rule 56 statements of fact play in resolving motions for summary judgment. Donnelly moves to strike in its entirety Plaintiff's Response to Moving Party's Rule 56.1 Statement of Undisputed Material Facts, or alternatively, to strike certain enumerated portions of the Response that lack record citations, are based on inadmissible evidence, or are unsupported by the record. Specifically, Donnelley argues that Noe's Response to Donnelley's Rule 56 Statement of Facts should be stricken because: (1) Noe fails to provide specific references to affidavits, parts of the record or

other supporting material, (2) Noe's own inconclusive testimony does not create a factual issue, (3) Noe's objections based on Donnelley's "interested party affidavits," hearsay, relevance, and legal conclusions should be rejected, and (4) Noe's other denials are unsupported by the record.

Local Rule 56.1(b)(3) explains the requirements for a response to the movant's statement of facts on summary judgment:

> "(A) numbered paragraphs, each corresponding to and stating a concise summary of the paragraph to which it is directed, and
>
> (B) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon…" N.D. Ill. Loc., R. 56.1.

The Court has discretion to strike any pleadings that do not conform to the local rules. *Bell, Boyd & Lloyd v. Tapy*, 896 F.2d 1101, 1103 (7th Cir. 1990). With or without a motion to strike, the Court reviews statements of material fact and eliminates from consideration any arguments, conclusions, or assertions that are unsupported by the record that are offered in support of fact statements. *See, e.g., Sherden v. Cellular Advantage, Inc.*, 2009 U.S. Dist. LEXIS 47991, *2-4 (N.D. Ill. June 9, 2009); *Sullivan v. Henry Smid Plumbing & Heating Co.*, Inc., 2006 U.S. Dist. LEXIS 22455, *2 n.2 (N.D. Ill. Apr. 10, 2006). The Court is able to disregard improper interpretation, analysis, and unfounded assertions contained in a Rule 56 statement.

The rule itself requires that factual assertions and denials be supported by material in the record with specific citations. Fed.R.Civ.P. 56(c). Federal Rule of Civil Procedure 56(c)(4) mandates that supporting and opposing affidavits be made on personal knowledge. Fed.R.Civ.P. 56(c)(4). Personal knowledge may include reasonable inferences that are "grounded in

observation or other first-hand personal experience. They must not be flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience." *Payne v. Pauley,* 337 F.3d 767, 772 (7th Cir. 2003) (quoting *Visser v. Packer Eng'g Assoc.*, 924 F.2d 655, 659 (7th Cir. 1991)(en banc)). Statements, which would otherwise be inadmissible hearsay, may be admissible on summary judgment if the statements are offered, not for the truth of the matter asserted, but for a non-hearsay reason to show intent or state of mind. See, e.g., *Corral v. Chicago Faucet Co.*, 2000 U.S. Dist. LEXIS 5732, *15 n.4 (N.D. Ill. Mar. 9, 2000)(finding co-workers' statements to a supervisor about the plaintiff's conduct admissible to show the employer's state of mind and reason for terminating the plaintiff); *Schmucker v. Data-Link Systems, Inc.*, 1997 U.S. Dist. LEXIS 8735, at *7 (N.D. Ind. June 5, 1997)(information reported by the plaintiff's co-workers during an investigation was admissible to show the company president's "state of mind and good faith belief that he terminated [the plaintiff] because of his inappropriate and intimidating behavior.").

Based on the foregoing discussion, the Court need not rule on the particulars of Donnelley's motion to strike Noe's L.R. 56.1 Response to Donnelley's Statement of Facts because any statements or responses that lack evidentiary support, contain legal conclusions or are otherwise noncompliant with Rule 56 will not be considered by the Court in ruling on Donnelley's motion for summary judgment. Donnelley's motion to strike is denied consistent with the discussion above.

**Motion for Summary Judgment**

**Background**

Unless otherwise noted, the following facts are undisputed, admitted or deemed admitted under Local Rule 56.1. Donnelley is a printing company headquartered in Chicago, Illinois, with

a printing plant in Dwight, Illinois, where Michael Noe was employed. Each printing press is staffed by a team consisting of a Press Operator, an Assistant Press Operator, a Rolltender, a Press Helper and a Material Handler, all of whom report to a shift supervisor and a department manager. Noe was hired in 1994 as a Material Handler. In May 1999, he was promoted to Press Helper. Noe continued as a Press Helper until his termination on April 21, 2008. From May 7, 2006, through April 2008, Noe worked on either the first shift (7:00 a.m. to 3:00 p.m.) or second shift (3:00 p.m. to 11:00 p.m.), reporting directly to Shift Supervisors Earl Alexander and Jeff Juergens, and indirectly to Pressroom Managers Dave Cornale and Michael Ryan.

Donnelley's attendance policy, effective May 1, 2004, provided that "An Occurrence is one or more consecutive workdays missed for the same cause. Non-consecutive days are considered separate and unrelated occurrences except when taken as part of a Family Medical Leave Act (FMLA) qualifying leave. A Tardy/Leave Early is defined as any absence less than two hours at the beginning or end of a shift… tardies/leave earlies will also count as .5 of an absence occurrence." The policy also provides that employees at the Informal Reminder/Record of Conversation level are not eligible for promotion. Positive counseling up to and including separation may be imposed for making false or misleading statements concerning absences. In January 2007, Donnelley revised the policy to add that personal absences and illnesses in the family will be counted as individual occurrences.

Donnelley's Family and Medical Leave Act policy was posted in the plant and on the company's intranet. The FMLA policy indicated that notice and application was necessary with 30 days notice when foreseeable and generally within one to two business days of learning of a non-foreseeable absence. The policy also provided for procedures for notifying the company and providing medical certification. Medical certification was required within 15 days. The

4

policy warned that the failure to provide adequate medical certification in a timely manner may result in the denial of leave unless or until it is provided.

On September 26, 2006, Noe's wife was taken to the hospital and Noe took off work from that date through October 3, 2006, to care for her. On September 28, 2006, Noe contacted the company to request continuous FMLA leave for those dates. He submitted the completed documentation on November 8, 2006, and Donnelley approved the request. On November 15, 2006, Noe requested intermittent FMLA leave to care for his wife. He submitted the documentation on December 6, 2006. Noe missed work on several days in October and November 2006 without prior FMLA approval, though Noe states he requested FMLA leave for November 18-19 and November 30, 2006. On December 4, 2006, Noe was issued a "Final Warning" consisting of seven absence occurrences, including the disputed November dates. Noe contacted the company on December 5, 2006, to obtain intermittent FMLA authorization for all of his October and November absences. On December 6, 2006, he submitted his application and certification for absences from October 4, 2006, to November 3, 2006. Donnelley approved the application and removed from his record absences from that period (i.e., October 20-26) and nullified his Final Warning.

On December 13, 2006, Noe submitted additional documentation and requested intermittent leave from November 4, 2006, through March 31, 2007. Donnelley approved the application for November 8 and 11, 2006, but the November 18th, 19th, and 30th absences remained unapproved because Noe had not indicated they were for FMLA purposes. Noe continued to incur absences for which he received progressive discipline. On January 31, 2007, and June 14, 2007, he received discipline notices which continued to list November 18-19 and November 30, 2006 as unexcused absences. Noe did not challenge the discipline notices that he

5

received January 31, 2007, or June 14, 2007, that continued to include November 18-19, and 30 absences until he received a Separation Notice on July 16, 2007. On August 3, 2007, Donnelley approved November 30, 2006, as FMLA related because Noe produced a copy of a scheduling sign-up sheet that noted "Noe FMLA."

Noe's absences continued and he was off work from July 9 through July 11, 2007. He submitted FMLA documentation on July 30, 2007. Donnelley approved July 9-10, but denied July 11 because Noe had exhausted his FMLA leave time. Noe claims that he was told that he had 105 hours of FMLA leave left. Noe continued to receive discipline for absences and tardies, which he admitted were due to traffic and oversleeping.

All press employees are required to scan their ID card at the beginning and end of each shift at any scanner located throughout the plant. An employee who fails to scan his ID is required to report the failure to his shift supervisor and complete a Scan Error Report logging his start and end time.

On April 8, 2008, Noe reported to his supervisor Earl Alexander that his eye was irritated from ink chips that flaked off the press the day before. The following day, April 9, Noe had an hour-long doctor's appointment 30 minutes away from Dwight, which Milhauser the disability coordinator confirmed was at 11:30 a.m. Noe testified both that he did not recall what time his appointment was and, in response to a question of whether it was at 11:30 a.m. stated "I believe so." Noe did not recall telling either Alexander or Milhauser that his appointment was at 2:00 p.m. The ID scan records for April 9, 2008, indicated that Noe was six minutes late for his shift, which was enough to incur a tardy or .5 absence occurrence. April 9, 2008, Noe met with Milhauser to discuss filing a workers' compensation claim over his eye injury. Noe testified that nobody discouraged him from filing the claim nor did anyone treat him differently, and he did

6

not suffer any consequences as a result of filing the claim.

The following day, April 10, 2008, Noe did not scan in when he arrived for his shift. He told his supervisor that he did not scan in because the scanner by the back door was not working and he would have been tardy by the time he reached a different scanner. On his Scan Error Report for April 10, 2008, Noe stated that he was not late and did not scan in because he had lost his ID card. At the end of his shift, Noe used his ID to scan out. He testified at his deposition that his scan report was false.

Human Resources Generalist, Sharon Doyle, conducted an initial inquiry into Noe's tardy during which Noe admitted his statement about a lost ID card was incorrect. Noe's tardies on April 9 and 10, 2008, contributed to his exceeding the allowable attendance points under the company policy. The investigation ended with a report from Human Resources Director Tyrell that concluded Noe had either lied and falsified his Scan Error Reports or had misrepresented the reasons for his tardiness. Noe was terminated on April 21, 2008.

On April 9, 2008, Noe filed an Occupational Safety and Health Act (OSHA) complaint with the U.S. Department of Labor. He never informed anyone at Donnelley of the complaint and he does not know if anyone at Donnelley knew of it. OSHA notified Donnelley of the complaint without revealing Noe as the complainant.

Noe applied for promotions to Rolltender on six occasions during his employment at Donnelley and was never promoted. Noe alleges that the denials on July 2, 2007, and October 8, 2007, were retaliatory. Noe admitted that he did not know how many applicants there were, who selected the applicants for interview or what criteria were used to select interview and successful applicants. Donnelley never interviewed any applicants or filled the position posted for Rolltender in October 2007. In both July and October 2007, Noe had been issued

7

disciplinary notices, which rendered him ineligible for promotion. Noe disputes that all of the absences on those disciplinary notices should have been included. Noe does not present any evidence that Donnelley knew at the time that certain days would ultimately be excused from his disciplinary notices.

**Legal Standard**

A party is entitled to summary judgment if all of "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court construes the facts and all reasonable inferences in the light most favorable to the non-moving party when deciding a motion for summary judgment. Abdullahi v. City of Madison, 423 F. 3d 763, 773 (7th Cir. 2005). The party who bears the burden of proof on an issue may not rest on the pleadings or mere speculation, but must affirmatively demonstrate that there is a genuine issue of material fact that requires a trial to resolve. Celotex v. Catrett, 477 U.S. 317, 324 (1986).

**Discussion**

Donnelley argues that it lawfully terminated Noe for absenteeism and for lying about the reasons for his tardiness. Noe contends that Donnelley retaliated against him for taking FMLA time by terminating his employment, denying him promotions, and interfered with his FMLA leave. Noe further claims that Donnelley violated the Illinois Whistleblower Act by terminating him for filing an OSHA complaint and terminated him in retaliation for the OSHA complaint and for filing a workers' compensation claim. Donnelley asserts that it fully complied with the FMLA and that no issue of triable fact exists for any of Noe's statutory and common law claims.

*1. FMLA Retaliation*

To support a claim for retaliatory discharge, a plaintiff may use either of two methods of proof, direct evidence and indirect evidence. For Noe to establish a *prima facie* case of retaliatory discharge under the direct method, Noe must show that: (1) he engaged in a protected activity; (2) Donnelley took adverse employment action against him; and (3) there is a causal connection between Noe's protected activity and Donnelley's adverse employment action. *See Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 633 (7th Cir. 2009). Under the direct method, "proof of discrimination is not limited to near-admissions by the employer that its decisions were based on a proscribed criterion," but may include "circumstantial evidence which suggests discrimination albeit through a longer chain of inferences." *Luks v. Baxter Healthcare Corp.*, 467 F.3d 1049, 1052 (7th Cir. 2006). An employee proceeding under the direct method must show the employer's decision was based on a "prohibited animus." *Elkhatib v. Dunkin Donuts, Inc.*, 493 F.3d 827, 829 (7th Cir. 2007).

Here, there is no dispute that Noe engaged in a protected activity by taking FMLA leave and that his ultimate termination from employment is an adverse employment action. This Court then must determine whether there is genuine issue of fact as to the causal connection between Noe's FMLA leave and his termination. The record reveals no admissions by Donnelley that its termination of Noe from employment resulted from Noe's FMLA leave. At the time of his termination in April 2008, he had been approved for intermittent leave for the entire year. Although Noe points to a portion of the Investigation Report that preceded his termination in which his FMLA leave was referenced, the remainder of the report, including the conclusion shows that Noe was terminated for providing false and misleading information regarding his attendance record and that the references to his FMLA leave were part of

9

Donnelley's determination of which absences were excused and which were not. (*See* Pl. Rule 56.1 SOAF, Ex. 40, Dkt. 53-40.) Indeed, the conclusion of the Investigation Report states, "Mike [Noe] will be separated on Monday, 4/21/08 for violating the RRD Positive Counseling Policy, Rules of Conduct, by providing false and misleading information verbally and in writing about his absences and falsifying his time sheet." (*Id*.) Moreover, Noe testified in his deposition that on April 10, 2008, he told his supervisor that he did not scan in because the ID scanner by the back door was not working and he did not scan in elsewhere in the building because he would have been tardy. Noe went on to testify that he falsely reported on the scan error report that his ID was lost as the reason he did not scan in. (Def. Rule 56.1 SOF, Ex. A, p. 69, Dkt. 41-1.) Noe also acknowledged that he was told that his termination was a result of falsifying his time records. (*Id*. at 82.) Accordingly, there is no direct evidence of a causal connection between Noe's FMLA leave and his termination.

Noe argues that his supervisor Earl Alexander expressed hostility towards Noe's FMLA leave by telling him that he should come into work because other people were counting on him to do his job. Noe also claims that Alexander told him that he had to use vacation time for a July 2007 absence because if human resources did not approve more FMLA time, then Noe would be "out the door." However, isolated statements and remarks are insufficient under the direct method to show that the employer was motivated to terminate the employee for a discriminatory reason. *See Ptasznik v. St. Joseph Hospital*, 464 F.3d 691, 695 (7th Cir. 2006).

If Noe proceeds under the indirect method, he may create a presumption of discrimination by establishing a *prima facie* case of discrimination. *See Atanus v. Perry*, 520 F.3d 662, 672 (7th Cir. 2008). To create such a presumption, Noe must demonstrate that: (1) he engaged in statutorily protected activity; (2) he met his employer's legitimate expectations; (3)

he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *See Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 850 (7th Cir. 2008). If the plaintiff is able to create this presumption, the burden shifts to the employer to show a legitimate, non-discriminatory reason for its actions. *See Atanus*, 520 F.3d at 672. If the employer satisfies this burden of production, the burden shifts back to the plaintiff to show that the employer's reasons "are false and only a pretext for discrimination." *See id*.

Again, there is no dispute that Noe engaged in a statutorily protected activity or suffered an adverse employment action. Therefore this Court addresses whether a genuine dispute of material fact exists on the remaining elements enumerated above. There is no record evidence that Noe performed his job unsatisfactorily. Indeed, he received very positive evaluations, with the exception of his absenteeism. Noe contends that he was disciplined for absences that should have been covered by FMLA. There are three dates in particular dispute: November 18, 19, 30, 2006. Noe was eventually approved for an FMLA absence for November 30, 2006, but Donnelley asserts, and Noe does not provide any evidence to the contrary, that Noe never provided any documentation to support FMLA leave for November 18-19, 2006. Those absences remained on Noe's record and were included in two disciplinary notices on January 31, 2007, and June 14, 2007, because Noe had not provided the documentation necessary for FMLA approval for those dates. Indeed, Noe admitted in his deposition that he did not challenge those dates until after receiving his separation letter on July 16, 2007. (*See* Pl. Resp. to Def. SOF, ¶ 51.) "An employer cannot be deemed to retaliate against an employee by asking her to fulfill her obligations under the FMLA." *Ridings v. Riverside Medical Center*, 537 F.3d 755, 772 (7th Cir. 2008); *Bager v. Dade Behring, Inc.*, 210 F.3d 776, 778 (7th Cir. 2000) (concluding

that an employee's termination was appropriate because any absence beyond the deadline for turning in medical certification was not an entitled absence under the FMLA).

Noe also has not produced any evidence that he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. Noe pointed to one employee, Cosme Calderon, as a comparator, but admitted in his deposition that he had no knowledge of Calderon's attendance record or whether he had been disciplined. (*See* Pl. Resp. to Def. SOF, ¶59, Dkt. 53; Def. Rule 56.1 SOF, Ex. A, p. 203-04, Dkt. 41-1.) Donnelley's Director of Human Resources, Kathleen Tyrrell, stated in her affidavit that between April 2004 and April 2008, Donnelley terminated another press employee for falsifying his time records and that employee had never requested FMLA leave. Tyrrell also stated that Donnelley imposed progressive discipline on Cosme Calderon, who also had not requested FMLA leave during that time period. (*See* Def. SOF, Ex. C, ¶¶44-45, Dkt. 41-3.) Noe challenged Donnelley's proffered comparator as irrelevant. (*See* Pl. Resp. to Def. SOF, ¶25, Dkt. 53.) Yet, in order to establish a *prima facie* case of retaliation, Noe must show that he was treated less favorably, which he fails to do.

Even if Noe could establish a *prima facie* case of discrimination, Donnelley has met its burden of production to show a non-discriminatory reason for Noe's termination. Donnelley has produced evidence that Noe did not comply with the attendance policy and provided false or misleading information on his time records. The ID scan record from April 9, 2008, indicated that Noe was six minutes late, which is enough to incur a .5 "absence occurrence." (*See* Def. SOF, Ex. D, Tab E, ¶19, Dkt. 41-4.) Noe's supervisor Alexander and the Disability Coordinator Nick Milhauser both stated in their affidavits that Noe told them he had a doctor's appointment at 2 p.m. on that day. Noe testified that he did not know what he told them or what time his

appointment was on April 9, 2008. Milhauser learned from Noe's doctor that his appointment was scheduled for 11:30 a.m. Noe in fact testified in response to whether his appointment was at 11:30 a.m. "I believe so." (Def. Rule 56.1 SOF, Ex. A, p. 50, Dkt. 41-1.) Noe also testified to the following colloquy, "Q. You reported to Mr. Alexander that you had a 2:00 o'clock doctor's appointment. Do you remember that? A. It might have been, yeah. I have no clue." (*Id.* at p. 54). As discussed above, Noe admitted in his deposition that on April 10, 2008, he falsely stated on his scan report that he lost his ID, but told his supervisor he did not scan in because the scanner was not working. (*See id.* at 69.) Donnelley conducted an investigation into Noe's attendance record and terminated him on April 21, 2008, for providing misleading information on his attendance record. (*See* Pl. Resp. to Def. SOF, ¶¶20, 24, Dkt. 53.)

Noe asserts that Donnelley's proffered reason for his termination was pretextual because Donnelley never told Noe that he was being fired for falsifying his time records; if so, he would have had two business days to notify Donnelley that his tardies for his doctor's appointment and eye injury were FMLA time. Donnelley's policy for attendance problems was not necessarily termination, but positive counseling. Furthermore, Noe had FMLA time available at the time of his termination. However, as noted above, Noe testified in his deposition that he was told his termination was a result of falsifying his time records. Even though Noe potentially could have sought FMLA approval for the tardy incurred from his doctor's appointment, there is no indication from the record that he did seek such approval.

With respect to Donnelley's discipline policy for attendance problems, it is undisputed that the policy stated: "positive counseling *up to and including separation* may also be taken for the following: (a) Making false or misleading statements concerning the reason or need for an absence. (b) Exceeding the time authorized for an absence. (c) Intentionally prolonging an

13

absence. (d) Habitual or pattern abuse of attendance guidelines." (emphasis added) (*See* Pl. Resp. to Def. SOF, ¶30, Dkt. 53.) "When a progressive discipline policy permits an employer to exercise discretion in discharging an employee without exhausting all of the policy's steps, failure to follow all the steps does not suggest a discriminatory motive." *Long v. Teachers' Retirement System of the State of Illinois,* 585 F.3d 344, 351 (7th Cir. 2009) (citing *Fane v. Locke Reynolds LLP*, 480 F.3d 534, 541 (7th Cir. 2007)). Here, the policy is clearly permissive and allows for separation and therefore the fact that Noe was ultimately terminated after receiving progressive discipline is not evidence of a discriminatory motive.

Noe also alleges that Donnelley failed to promote him to rolltender on two different occasions, July 2007 and October 2007, in retaliation for his FMLA leave. The record indicates that Noe was not eligible for promotion on either of those two occasions because he had reached the "Informal Reminder/Record of Conversation" level of attendance discipline at that time. Although Noe asserts that several of the days that were included on his disciplinary record should have been FMLA, he concedes that at the time of his applications for rolltender, his attendance record showed he had discipline for more than five unexcused absences. (Def. Rule 56.1 SOF, Ex. A, p. 189, 190, Dkt. 41-2.) The "Informal Reminder/Record of Conversation" occurs on the fifth occurrence of absence and on the sixth tardy/leave early and at this level of discipline an employee is ineligible for promotion. (Def. Rule 56.1 SOF, Ex. B, p. 78, Dkt. 41-2.)

Even if some of the absences included on Noe's disciplinary record were for days that ultimately were approved as FMLA leave time, "an employer's mistaken belief that the plaintiff's conduct merited [discipline] is not unlawful, so long as the belief was honestly held." *Ptasznik v. St. Joseph Hospital,* 464 F.3d 691, 696 (7th Cir. 2006). Noe has not put forth any

evidence that establishes that Donnelley knew at the time of issuing the disciplinary action that Noe might ultimately produce some documentation that some of the dates were for FMLA leave and should not have been included. An employer may suspend application of FMLA leave time unless or until the employee provides medical certification or other documentation as required under the company's policy. *See Ridings v. Riverside Medical Center*, 537 F.3d 755, 768-69 (7th Cir. 2008); 29 C.F.R. §825.312(b). It is undisputed that Donnelley promoted four people to rolltender in July 2007, none of whom had more than five attendance occurrences. (*See* Pl. Resp. to Def. SOF, ¶66, Dkt. 53.) Donnelley asserts that it neither interviewed nor hired anyone for rolltender in October 2007, and Noe provides no evidence to contradict that averment. (*See id*. ¶67). Accordingly, this Court finds that there is no genuine issue of material fact on the issue of retaliation.

### 2. FMLA Interference

Pursuant to section 2615(a)(1) of the FMLA, it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or attempt to exercise, any right provided [by the Act]." 29 U.S.C. §2615(a)(1); *see Cracco*, 559 F.3d at 635. When an employee alleges that his employer interfered with his substantive rights under the FMLA, he must establish that: "(1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled." *Burnett v. LFW, Inc.*, 412 F.3d 471, 477 (7th Cir. 2006). "An employer who interferes with an employee's FMLA rights will not be liable if the employer can prove it would have made the same decision had the employee not exercised the employee's FMLA rights." *Cracco*, 559 F.3d at 636.

In his complaint, Noe alleges Donnelley interfered with Noe's exercise of his rights

under the FMLA when it fired him. Paragraph 38 of the complaint states: "When defendant decided to fire Mr. Noe, it anticipated or feared that he would use additional Family and Medical Leave in the future. The allegations of this paragraph are likely to have evidentiary support after a reasonable opportunity for further investigation and/or discovery." (Complaint, ¶38, Dkt. 1.) Noe does not flesh out this claim in his opposition to summary judgment and the claim finds no support in the record.

The FMLA permits an employer to require an employee requesting leave due to a serious health condition support the request by certification issued by the healthcare provider. 29 U.S.C. §2613(a). "If an employee fails to provide in a timely manner a requested medical certification to substantiate the need for FMLA leave due to a serious health condition, an employer may delay continuation of the FMLA leave until the employee submits the certificate. If the employee never produces the certification, the leave is not FMLA leave." *Ridings v. Riverside Medical Center*, 537 F.3d 755, 768-69 (7th Cir. 2008); 29 C.F.R. §825.312(b). Where FMLA absences were not foreseeable, Donnelley's policy required employees to notify the company that an absence was for FMLA leave as soon as practicable, within one to two business days of the absence. Donnelley also required medical certification within 15 days of the absence and indicated that "failure to provide adequate medical certification in a timely manner may result in denial of leave unless or until it is provided." ( Pl. Resp. to Def. SOF, ¶32, Dkt. 53.) The record shows that, on several occasions, Donnelley retroactively applied FMLA time for Noe long after its guidelines for providing documentation had expired. Moreover, Noe testified that every time he requested an FMLA leave he was approved. (Def. Rule 56.1 SOF, Ex. A, p. 128, Dkt. 41-1.)

**3. Illinois Whistleblower Act**

16

Under the Illinois Whistleblower Act, an employer is prohibited from "retaliating against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 ILCS 174/15.

Noe alleges that Donnelley violated the Illinois Whistleblower Act when it terminated him from employment after he filed an OSHA complaint following his eye injury. (Complaint, ¶41-47, Dkt. 1.) However, Noe admitted during his deposition that he did not inform anyone at Donnelley of his OSHA complaint and the Department of Labor never revealed his identity to the company. (*See* Pl. Resp. to Def. SOF, ¶26-27, Dkt. 53). Additionally, Noe failed to properly support his disagreement with Donnelley's factual claim that it refers all OSHA complaint notifications to the company's Environmental Health and Safety Specialist Linda Baehr to investigate and Baehr had not involvement in Noe's termination. (*See* Pl. Resp. to Def. SOF, ¶28, Dkt. 53.) Accordingly, there is no genuine factual dispute as to violation of the Illinois Whistleblower Act.

*4. Common Law Retaliatory Discharge*

There is no evidence in the record to support Noe's claim of common law retaliatory discharge for either his OSHA complaint or Workers' Compensation Claim. For the reasons stated above there is no evidence to show that anyone at Donnelley was aware that Noe had filed an OSHA complaint. Additionally, there is no record evidence that Noe was terminated for filing a workers' compensation claim. Noe testified at his deposition that no one discouraged him from filing a workers' compensation claim, that he was not treated differently after he filed the claim, and he did not believe that he suffered any consequences as a result of filing the claim. (*See* Pl. Resp. to Def. SOF, ¶12, Dkt. 53.) Therefore, this Court finds there is no triable

17

issue of fact on Noe's common law retaliation claim.

**Conclusion**

Based on the foregoing, this Court finds that even when viewed in the light most favorable to Noe, there is no genuine issue of material fact as to any claim and Donnelley is entitled to judgment as a matter of law. Therefore, Donnelley's Motion for Summary Judgment [38] is granted.

IT IS SO ORDERED.

Date: October 25, 2011

Entered: _____

Sharon Johnson Coleman